**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

CAIR-FOUNDATION, INC. and
CAIR FLORIDA, INC.,

     *Plaintiffs*,

v.

                                 Case No. 4:26-cv-315-MW-MJF

RON DESANTIS, *et al.*,

     *Defendants*.

_____/

**<u>PLAINTIFFS' EMERGENCY MOTION FOR RECONSIDERATION</u>**

Plaintiffs respectfully move for the Court's reconsideration **by <u>July 8, 2026</u>** of the partial denial of Plaintiffs' motion for a temporary restraining order and preliminary injunction. *See* ECF No. 26. For the reasons below, Plaintiffs renew their request for the temporary restraining orders ("TROs") that they sought in their original motion. *See* ECF No. 19 at 1–3.[1] **In the alternative, Plaintiffs seek an extremely narrow TRO against Florida's state attorneys (together, the "State Attorney Defendants") and the Attorney General to ensure that Plaintiffs and their counsel can continue to litigate this action** without the looming threat of

---

[1] Plaintiffs seek to temporarily restrain the designation of their organizations as "domestic terrorist organizations" ("DTOs") and the enforcement of Florida Statutes §§ 617.1420, 775.30, 775.33, 775.34, 874.03 (and related provisions in Chapter 874 and Section 823.05), and 943.03102, insofar as they concern DTOs ("DTO regime"). All statutory citations are to the 2025 Florida Statutes as amended by Laws of Florida chs. 2026-28 (HB 1471) and 2026-29 (HB 1473).

1

severe criminal penalties under, *e.g.*, Florida Statutes §§ 874.10, 874.03, and 775.33.

Thus, in the alternative, Plaintiffs respectfully request that the Court temporarily restrain the State Attorney Defendants and the Attorney General as follows:

(1) The State Attorney Defendants and Attorney General are temporarily restrained from implementing or enforcing the DTO regime and its penalties against Plaintiffs for any speech or conduct related to the prosecution of this litigation; and

(2) The State Attorney Defendants and Attorney General are temporarily restrained from implementing or enforcing the DTO regime and its penalties against third parties, including Plaintiffs' counsel, for any speech or conduct related to the prosecution of this litigation.

## MEMORANDUM OF LAW

On July 1, 2026, Governor DeSantis announced that he had received a "notice of intent" from Defendant Mark Glass to designate Plaintiff CAIR-Foundation, Inc. ("CAIR") as a "domestic terrorist organization" ("DTO") under two new Florida laws, HB 1471 and 1473. Under these laws, CAIR and its Florida chapter, Plaintiff CAIR Florida, Inc. ("CAIR-Florida") can be designated as early as tomorrow, July 8, 2026. Designation triggers a host of draconian criminal penalties, which will immediately force Plaintiffs to shut down their operations in Florida and will substantially impair CAIR's ability to pursue its mission nationwide.

To prevent manifest injustice, Plaintiffs respectfully ask the Court to reconsider its denial of Plaintiffs' motion for a temporary restraining order. *See* ECF No. 26. In particular, Plaintiffs address: (1) why reconsideration is appropriate because designation is imminent, as Plaintiffs elaborate on below; (2) why, in the absence of a TRO, Plaintiffs, their staff, their counsel, and other third parties **are at substantial risk of prosecution and severe and unconstitutional criminal penalties simply for litigating this case after today, July 7**; and (3) the status of service on Defendants.

## PROCEDURAL BACKGROUND

On July 1, 2026, Plaintiffs initiated this suit for declaratory and injunctive relief. Complaint, ECF No. 1. The next day, Plaintiffs moved for a temporary

restraining order and preliminary injunction. ECF No. 19. In declarations filed with their motion, Plaintiffs attested to the harms they will suffer if CAIR's designation, or both CAIR and CAIR-Florida's designations, become effective. ECF No. 19-1 (Mitchell Decl. ¶¶ 37–50); ECF No. 19-2 (Ruiz Decl. ¶¶ 39–61); *see also* ECF No. 19 at 42–43 (explaining that the harms described in Plaintiffs' declarations will be irreparable).

On July 6, the Court denied Plaintiffs' request for a temporary restraining order. ECF No. 26. The Court explained that it was "not persuaded that relief must be afforded before Defendants are heard on Plaintiffs' motion." *Id.* at 1 (citing *Dream Defenders v. DeSantis*, 559 F. Supp. 3d 1238 (N.D. Fla. 2021), *rev'd*, 119 F.4th 872 (11th Cir. 2024)). Accordingly, the Court ruled that Plaintiffs' motion would be "treated as a motion for preliminary injunction going forward." ECF No. 26 at 2.

## LEGAL STANDARD

A court should grant a motion for reconsideration when there is (1) "an intervening change in controlling law; (2) "new evidence"; or (3) "the need to correct clear error or manifest injustice." *Ford v. Gov't Emps. Ins. Co.*, 2015 WL 11109374, at *1 (N.D. Fla. June 11, 2015).

## ARGUMENT

**I.    Because Plaintiffs' designation is imminent, a TRO is necessary to prevent manifest injustice.**

Reconsideration is necessary because, absent judicial relief, Florida will designate CAIR as a DTO as early as tomorrow, and this will immediately subject CAIR and CAIR-Florida to severe and irreparable harm.[2] The DTO regime's sweeping criminal prohibitions will force CAIR and CAIR-Florida to immediately cease all Florida-based operations and will cause CAIR significant harm to its nationwide operations. ECF No. 19-1 (Mitchell Decl. ¶¶ 8–10, 37–60); ECF No. 19-2 (Ruiz Decl. ¶¶ 3–4, 38–61).

On July 1, Governor DeSantis posted an infographic on his X account **"announc[ing] the receipt of the first notices of intent** to designate terrorist organizations under Florida's new statutory authority"—including CAIR. ECF No. 19-3 at 103 (emphasis added); *see also* Fla. Stat. § 943.03102(2)(a). Thus, under the statute, the Governor and Cabinet will vote to approve CAIR's designation **as early as tomorrow (July 8)**. Fla. Stat. § 943.03102(2)(d). The statute authorizes Defendant Glass's publication of CAIR's designation in the Florida Administrative

---

[2] While the Governor only referenced CAIR in his announcement, he has made plain that he does not distinguish between CAIR and CAIR-Florida, and that he considers the latter to be a "terrorist organization." *See* ECF 19-3 at 18.

Register the same day. *Id.* § 943.03102(2)(e). At that point, the consequences of designation immediately attach. *Id.* § 943.03102(1)(b).

The Governor has said that he and the Cabinet are moving swiftly to make CAIR's designation effective. On July 1, Governor DeSantis and other Florida executive officials held a press conference on forthcoming DTO designations. ECF No. 19-3 (Ex. 25). "My office and the Cabinet," said the Governor, "are poised to officially designate the first slew of terrorist organizations under the new law." *Id.* at 2:09–17. These designations, the Governor said, would constitute "a reaffirmation of my prior executive order for . . . the Council of [sic] American-Islamic Relations." *Id.* at 2:17–24. The Governor noted that designation under the DTO regime "requires ratification by the Cabinet," and he promised to "get that done very, very quickly." *Id.* at 1:42–48. "We don't have a regularly scheduled cabinet meeting in July," said the Governor, "but I think we're going to be able to . . . jump on a call and do an emergency meeting to be able to ratify this, and then, you know, off to the races." *Id.* at 8:59–9:14.

Also on July 1, the Governor issued a press release in which he "announced the intent to designate" CAIR as a "domestic terrorist organization." ECF 19-3 (Ex. 28 at 107). The Governor's press release specifically stated that "individuals who knowingly provide material support or resources to designated organizations **will face criminal penalties** established under Florida law." *Id.* (emphasis added).

6

Given the imminence of these harms and the unconstitutionality of Plaintiffs' designation under the DTO regime, *see* ECF No. 19 at 14–42, Plaintiffs respectfully request that the Court reconsider its denial of Plaintiffs' motion for a TRO. Here, in contrast to *Dream Defenders*, 119 F.4th at 877, it is clear from the outset that the DTO regime will impose severe penalties on Plaintiffs upon designation, effectively making it impossible for them to function in Florida. *See, e.g.*, Fla. Stat. §§ 775.33, 874.03, 874.10.

## II.    At a minimum, the Court should enter a narrow TRO to ensure that Plaintiffs and their counsel can litigate this case without risk of prosecution.

Immediate, pre-designation relief is necessary to ensure that Plaintiffs and their counsel can continue to assert and defend Plaintiffs' constitutional rights through this lawsuit without risking severe criminal penalties. Plaintiffs are two U.S. civil rights nonprofits serving Florida communities and Floridians. Whatever disagreement the State Executive Defendants may have with Plaintiffs' advocacy and work, there is no question that Plaintiffs have First and Fourteenth Amendment rights, including the right to counsel and to litigate this case. *See* ECF No. 19 at 37–42. The DTO regime, on its face, criminalizes the provision of legal services to designated organizations. *Id.* at 38–39. It also criminalizes ordinary activity by designated organizations that would be integral to engaging in litigation in Florida; for instance, it prohibits staff from working for them, and it prohibits third parties

7

from knowingly providing litigation support services.[3] Plaintiffs will be irreparably harmed by designation.

Absent emergency relief, when Florida designates CAIR, as the Governor has promised will be done "very, very quickly," Plaintiffs' counsel will risk prosecution merely by representing Plaintiffs in these proceedings. Even complying with the Court's July 6th order—by conferring on Plaintiffs' motion for a preliminary injunction, filing a proposed discovery schedule, and participating in a scheduling hearing, ECF No. 26—could expose Plaintiffs' counsel to prosecution for violation of criminal law for providing "material support" to Plaintiffs in the form of legal services and "expert advice and assistance," Fla. Stat. § 775.33(3), and for knowingly "initiat[ing]" activity to further Plaintiffs' "interests," Fla. Stat. §§ 874.10, 874.03(4)(a). Plaintiffs and their staff likewise face the threat of prosecution merely for participating in this lawsuit, which would "benefit, promote, or further" Plaintiffs' "interests." Fla. Stat. §§ 874.10, 874.03(4)(a).

---

[3] Florida Statute § 775.33 makes it a crime to knowingly provide a designated DTO with "material support or resources," including any "service" or "expert advice or assistance." The same statute prohibits a DTO's employees from working for it. *See id.* § 775.33(3), (5). Separately, Florida Statutes §§ 874.10 and 874.03(4)(a) impose criminal penalties on any person or corporation who knowingly "initiates, organizes, plans, finances, directs, manages, or supervises" any activity to "benefit, promote, or further" a designated DTO's "interests."

When Florida designates CAIR, these criminal prohibitions are effective *immediately*. CAIR's designation will become effective as soon as tomorrow. *See supra*; Fla. Stat. § 943.03102(2)(d). The Office of Statewide Prosecution also has already confirmed that it will "offer [its] full support" for the State Executive Defendants' "initiative to designate" groups as "domestic terrorist organizations" and to "prosecut[e] criminals to the fullest extent that the law allows." ECF No. 19-3 (Ex. 25 at 4:31–4:56).

The designation of CAIR will severely impair Plaintiffs' and their counsel's ability to litigate this case. Counsel will be at risk of prosecution simply for carrying out the ordinary duties of lawyers, including fact-finding, legal analysis, briefing, and communicating with opposing counsel.[4]

---

[4] And, indeed, counsel will be at risk of prosecution simply for exercising their own First Amendment rights to zealously represent their clients. *Cf. In re Primus*, 436 U.S. 412, 428 (1978); *Little v. City of North Miami*, 805 F.2d 962, 968 (11th Cir. 1985) (in the Eleventh Circuit, lawyers representing a party for noncommercial purposes are "engaging in a 'form of political expression' entitled to First and Fourteenth Amendment protection"); *Jean v. Nelson*, 727 F.2d 957, 983 (11th Cir. 1984) (en banc) (lawyers "have a [F]irst [A]mendment right to inform individuals of their rights."), *aff'd on different grounds*, 472 U.S. 846 (1985); *Jenner v. U.S. Dep't of Justice*, 784 F. Supp. 3d 76, 94 (D.D.C. 2025) (executive order violated law firm's clients' First Amendment rights, finding that "courtroom advocacy" is "the very core of the First Amendment's protection of 'litigation as a vehicle for effective political expression and association'"); *Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp. 3d 105, 165 (D.D.C. 2025) (executive order infringed on the "right of counsel with their clients to consult and work together," activity which "Supreme Court precedents firmly uphold").

The prosecution risk is also significant for CAIR employees who participate in the litigation—by, for example, providing declarations and factual information (including maintaining and facilitating access to IT and other systems), or coordinating with counsel to satisfy Plaintiffs' discovery obligations. This harm is manifest for CAIR, which has senior operations and IT executives and two Board members residing in Florida. It is especially severe for CAIR-Florida. Because CAIR-Florida's leadership and staff are based in Florida, CAIR-Florida will be forced to completely suspend operations, lest its employees risk criminal charges for providing CAIR with material support or initiating activity that furthers CAIR's interests. ECF No. 19-2 (Ruiz Decl. ¶¶ 38–43). But in order to meaningfully participate in this litigation, Plaintiffs' Florida-based employees will need to, for example, confer with counsel, make litigation decisions, collect documents, and prepare discovery responses. After CAIR's designation, these actions risk prosecution under Florida Statutes §§ 775.33, 874.10 and 874.03(4)(a).

The DTO regime's criminal penalties are also substantially likely to interfere with Plaintiffs' and their counsel's ability to engage vendors, experts, and other service providers related to this litigation. The material support statute, for example, prohibits the knowing provision of any "service" to a designated organization, for any purpose. *See* Fla. Stat. § 775.33(3). As a result, upon CAIR's designation, Plaintiffs will invariably struggle to engage vendors willing to provide litigation

services in the state, including process servers, videographers, and court reporters (services Plaintiffs have already used in this case or will likely need to use in the course of litigation). Even vendors outside the state would understandably be hesitant to provide services to Plaintiffs, as doing so could subject them or their employees to potential criminal prosecution in Florida.

At a minimum, a narrow TRO to ensure that Plaintiffs and third parties can freely litigate this case is necessary to prevent manifest injustice. The Constitution requires that Plaintiffs be allowed to "meaningfully challenge" CAIR's (and CAIR-Florida's) imminent designation with the assistance of counsel. *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 874 (D.C. Cir. 1984); *see United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 221–22 (1967) (the First Amendment gives parties "the right to hire attorneys" to assert their "legal rights"); ECF No. 19 at 37–42. But unless the Court intervenes, designation will hobble Plaintiffs' legal challenge, forcing Plaintiffs to risk prosecution to litigate this case—and forcing their staff, their attorneys, and others to risk prosecution if they assist Plaintiffs in doing so. In essence, designation will "strip[]" Plaintiffs of their "right to defend [themselves] in court." *Am. Airways Charters*, 746 F.2d at 873 n.14; *see* ECF No. 19 at 37–42; *see Powell v. Alabama*, 287 U.S. 45, 69 (1932) ("If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be

doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.").

Given the magnitude of the constitutional harms to Plaintiffs, their employees, and their counsel, the balance of the equities weighs decisively in their favor. *See Fla. Immigrant Coal. v. Uthmeier*, 778 F. Supp. 3d 1315, 1325 (S.D. Fla. 2025) (finding harm to the state "from briefly suspending enforcement of" a criminal statute whose constitutionality was challenged to be "minimal" and granting a request for a temporary restraining order). Relief here is both appropriate and urgent.

## III.   Plaintiffs expect service of process to be complete tomorrow, if not today.

Formal service has been complicated by Defendants' office closures over the holiday weekend (a five-day weekend for the State and some state attorneys' offices). However, Plaintiffs expect almost all Defendants to be served with the complaint and Plaintiffs' motion for a TRO and PI by today; any remaining Defendants will be served tomorrow.

Plaintiffs have notified the State Executive Defendants' general counsels about this suit, Plaintiffs' motion for a TRO and PI, and the Court's order via email. Plaintiffs have also emailed these documents to Doug Wyler, counsel for the State Attorney Defendants. Plaintiffs and the State Attorney Defendants are negotiating a limited-participation agreement.

Following the filing of this motion, Plaintiffs will serve the State Executive Defendants with the motion and will mail and email the motion to Mr. Wyler.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court reconsider its July 6, 2026 order denying Plaintiffs' motion for a temporary restraining order.

Respectfully submitted July 7, 2026,

/s/ *Hina Shamsi*

Scott D. McCoy (FBN 1004965)
**Southern Poverty Law Center**
2 South Biscayne Blvd., Ste. 3200
Miami, FL 33131
(786) 347-2056
scott.mccoy@splcenter.org

Aaron S. Fleisher*
*Not licensed in DC*
**Southern Poverty Law Center**
1101 17th Street NW, Ste. 550
Washington, DC 20036
(202) 945-7904
aaron.fleisher@splcenter.org

Diego A. Soto (*pro hac vice*)
**Southern Poverty Law Center**
150 E. Ponce De Leon Ave., Ste. 340
Decatur, GA 30030
(404) 521-6700
diego.soto@splcenter.org

Mary Ella W. Simmons*
**Southern Poverty Law Center**
201 St. Charles Ave., Ste. 2000

Hina Shamsi (*pro hac vice*)
Ashley Gorski (*pro hac vice*)
Charles Hogle (*pro hac vice*)
Celin Carlo-Gonzalez (*pro hac vice*)
Natalie Smith (*pro hac vice*)
Patrick Toomey (*pro hac vice*)
**American Civil Liberties
Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
hshamsi@aclu.org
agorski@aclu.org
charlie.hogle@aclu.org
ccarlo-gonzalez@aclu.org
n.smith@aclu.org
ptoomey@aclu.org

Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Ste. 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

New Orleans, LA 70170
(504) 486-8982
maryella.simmons@splcenter.org

Manoj S. "Sachin" Varghese
   (*pro hac vice*)
Mark L. Bailey (*pro hac vice*)
**Bondurant, Mixson & Elmore, LLP**
1201 W. Peachtree St. NW, Ste. 3900
Atlanta, GA 30309
(404) 881-4100
varghese@bmelaw.com
bailey@bmelaw.com

Shereef H. Akeel*
Samuel Simkins*
**Akeel & Valentine, PLC**
888 West Big Beaver Road, Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
sam@akeelvalentine.com

* *Pro hac vice motion forthcoming*

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum complies with Local Rule 7.1(F) because it contains 2406 words.

I further certify that the emergency nature of the relief sought renders appropriate the *ex parte* submission and disposition of Plaintiffs' motion for reconsideration.

Dated: July 7, 2026                  */s/ Hina Shamsi*

Hina Shamsi
*Counsel for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I certify that the foregoing document will be served today on the State Attorney Defendants by U.S. mail and email to Doug Wyler, Wyler Law Firm, 961687 Gateway Blvd, Suite 101-L, Fernandina Beach, FL 32034, doug@wylerlawfirm.com; will be served on the State Executive Defendants today by leaving it at each of their offices; and will be emailed today to the State Executive Defendants at the email addresses below.

1.  Governor DeSantis: David Axelman, General Counsel, Executive Office of the Governor, david.axelman@eog.myflorida.com

2.  Chief of Domestic Security Glass: Kate Holmes, General Counsel, Florida Department of Law Enforcement, kateholmes@fdle.state.fl.us

3.  Attorney General Uthmeier: John Bajger, Associate Deputy Attorney General, Civil Litigation Division, Florida Department of Legal Affairs, john.bajger@myfloridalegal.com, oag.civil.eserve@myfloridalegal.com

4.  CFO Ingoglia: Francis Carbone, General Counsel, Florida Department of Financial Services, francis.carbone@myfloridacfo.com

5.  Commissioner Simpson: Sean Garner, General Counsel, Florida Department of Agriculture and Consumer Services, generalcounsel@fdacs.gov

Dated: July 7, 2026

/s/ Hina Shamsi
Hina Shamsi
*Counsel for Plaintiffs*

16