**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CAIR-FOUNDATION, INC. and
CAIR-FLORIDA, INC.,

*Plaintiffs*,

Case No. 4:26-cv-315-MW-MJF

v.

RON DESANTIS, *et al.*,

*Defendants*.
_______________________________/

**DEFENDANTS' MOTION TO DISQUALIFY
JUDGE MARK E. WALKER**

It is difficult to imagine a task less welcome to a litigant than moving to disqualify a trial judge because "he has a personal bias or prejudice" against the litigant. 28 U.S.C. § 455(b)(1). Defendants are constrained to confront that task here, however, for this Court has made no effort to hide its contempt for Governor Ron DeSantis and the State of Florida, repeatedly making comments "display[ing] a deep-seated . . . antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

The Court's animosity has been reflected in openly antagonistic comments, all entirely gratuitous, in a series of unrelated cases over a period of years. The Court's disdain for the Governor recently reached a new low in a case that is closely related to this one, when it denounced Governor DeSantis as "a bully . . . in the

familiar sense"—*i.e.*, "an abusive meanie"—and taunted the Governor about his unsuccessful 2024 presidential campaign: "While he gave it the good ol' college try, Defendant is not the president." Order Granting Mot. for Prelim. Inj., *CAIR-Found., Inc. v. DeSantis* ("*CAIR I*"), No. 4:25-cv-00516 (N.D. Fla. Mar. 4, 2026), ECF 43 at 9 n.7, 20 n.13 ("Order"). In light of these and like comments in prior cases, Governor DeSantis has urged the Eleventh Circuit in *CAIR I* to reassign that case to another judge, arguing that this Court's "headline-grabbing invective leaves the reasonable public in no doubt that, when hailed into Judge Walker's court, [Florida's] laws and leaders will be denied a fair shake." Appellant's Opening Br., *CAIR I*, No. 26-10735 (11th Cir. Apr. 20, 2026), ECF 15 at 46. So too here. This Court's open and long-standing personal hostility to the Governor and the State of Florida goes beyond merely raising a reasonable question about the Court's impartiality in this case: it answers the question. Accordingly, the Court should, in compliance with 28 U.S.C. § 455(a), and (b)(1), disqualify itself from the case.

## MEMORANDUM OF LAW

## BACKGROUND

### I. The Present Lawsuit

This past legislative term, the Florida Legislature addressed the issue of domestic terrorist organizations by passing two companion bills. The first, HB 1471, defines "domestic terrorist organizations" and provides a process by which the Chief

of Domestic Security may designate such organizations with the approval of the Governor and the Cabinet. Fla. Stat. § 943.03102(1), (2). It further directs the Department of Law Enforcement ("FDLE") to "adopt rules to implement" that process. *Id.* § 943.03102(5). HB 1471 also provides restrictions and penalties associated with such designations, such as preventing state agencies from expending funds to support such organizations and criminalizing entities that provide material support to them. The second bill, HB 1473, provides an exemption from public-records requirements for certain information relating to the designation of an organization as a domestic terrorist organization. The Governor signed both HB 1471 and HB 1473 into law on April 6, 2026, and they took effect on July 1.

That same day, Plaintiffs CAIR-Foundation ("CAIR") and its associated Florida entity, CAIR-Florida, filed this lawsuit against the Governor, the Chief of Domestic Security, the entire Cabinet—the Attorney General, the Chief Financial Officer, and the Commissioner of Agriculture—and every State Attorney in Florida, arguing that the laws are unconstitutional and seeking an injunction to prevent Plaintiffs from being designated as domestic terrorist organizations or otherwise penalized under the laws. ECF 1.

On July 13, 2026, the Parties filed a Status Report. ECF 33. It explained that the FDLE intends to promulgate regulations pursuant to Section 943.03102(5) and that no designations will be made until the regulations are finalized and become

effective. *Id.* On July 22, the Parties filed another Joint Status Report, advising that the regulations implementing section 943.03102 will not become effective before August 10, 2026, and that Defendants will not take any action with respect to Plaintiffs under the new regulations for at least three days after the regulations become effective. ECF 39. Plaintiffs, in turn, agreed to withdraw their preliminary-injunction motion. The next day, this Court denied that motion without prejudice. ECF 41. On August 3, 2026, this Court issued its Initial Scheduling Order. ECF 42.

## II. The Court's Antagonistic Comments About the Governor and Florida in *CAIR I*

On December 8, 2025, Governor DeSantis signed Executive Order ("EO") 25-244. EO at 1–4 (available at: https://perma.cc/BK7L-PZHA). The EO designates several groups as terrorist organizations, including the Muslim Brotherhood, Hamas, and CAIR, and explains the basis for those designations. *Id.* at 1–3. Further, the EO prevents the designated terrorist groups, or any person known to have provided material support to them, "from receiving any contract, employment, funds, or other benefit or privilege" from State agencies. *Id.* at 3–4.

On December 15, 2025, CAIR and CAIR-Florida sued the Governor, alleging viewpoint discrimination, retaliation, coercion, petition, and association claims under the First Amendment, as well as a due process claim under the Fourteenth Amendment. On January 23, 2026, CAIR moved for a preliminary injunction on its First Amendment claims. On March 4, 2026, this Court enjoined the EO as to CAIR,

finding that CAIR's coercion claim was likely to succeed. Order at 22.

In that order, this Court made multiple statements reflecting its long-running antipathy to the Governor and the State of Florida. The Court charged that the Governor was "continuing the troubling trend of using an executive office to make a political statement at the expense of others' constitutional rights" and that "[o]nce again, Florida chooses political posturing over the First Amendment." *Id.* at 1–2; *see id*. at 22 ("Political grandstanding does not an emergency make."). Worse, the Court accused the Governor of "choosing to be a bully—in the familiar sense of the term," a sense that the Court defined as "an abusive meanie." *Id.* at 9 n.7. Worse still, in distinguishing cases calling for judicial deference to the President's judgment in matters of national security, the Court mocked the Governor for his campaign for president: "While he gave it the good ol' college try, Defendant is not the president." *Id.* at 20 n.13. But even that taunt did not reach the bottom, for the Court, ignoring that the Executive Order applies *not* to all Muslims but only to specific organizations with known and well-documented support for *terrorism,* baselessly accused the Governor of religious bigotry: "[A]s we all know, it is easy for those in power to target minority groups with little pushback. Sadly, history teaches that it is often minority religious groups who find themselves in the crosshairs. And here, the Muslim community presents an especially easy target for Defendant, inasmuch as they make up less than 1% of Florida's population." *Id.* at 28. The Court then added

this patronizing non sequitur: "It also pains this Court to have to point out that not all Muslims are terrorists." *Id.* at 28 n.16.

The Governor has appealed the preliminary injunction order to the Eleventh Circuit, arguing that the case should be reassigned on remand.

### III. The Court's Antagonistic Comments About the Governor and Florida in Prior Cases

This is not new. Indeed, the Court's comments in *CAIR I* expressly advert to prior cases involving legislation or executive action that have provoked the Court's indignation ("continuing the troubling trend," "once again").

For example, in *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159 (N.D. Fla. 2022), this Court ridiculed the private employment provisions of the Individual Freedom Act: "In the popular television series *Stranger Things*, the 'upside down' describes a parallel dimension containing a distorted version of our world. . . . Now, like the heroine in *Stranger Things*, this Court is once again asked to pull Florida back from the upside down." *Id.* at 1168. Likewise, in *Pernell v. Florida Board of Governors of State University System*, 641 F. Supp. 3d 1218 (N.D. Fla. 2022), the Court denounced the public education provisions of the Individual Freedom Act in apocalyptic terms, claiming that the law was "positively dystopian," *id.* at 1230, and that the Florida Legislature sought to "cast us all into the dark," *id.* at 1291, of an Orwellian world where "the clocks . . . strik[e] thirteen," *id.* at 1230. The Court, in contrast, lauded the plaintiff university professors as "the priests of our democracy."

*Id.* at 1290. In *Austin v. University of Florida Board of Trustees*, 580 F. Supp. 3d 1137 (N.D. Fla. 2022), a case in which University of Florida professors challenged a University policy requiring that administrators give prior approval before professors could testify as experts in cases brought against the State, the Court likened the administrators' alleged "suppression of ideas out of favor with Florida's ruling party" to the obedience of Hong Kong's once-great universities to the Chinese Communist Party after the British handover in 1997. *Id*. at 1144–45. "If those in UF's administration find this comparison upsetting," the Court chided, "the solution is simple. Stop acting like your contemporaries in Hong Kong." *Id*. at 1145 n.12. And the Court took a detour in its opinion to note that SB 90, an election law that "was a key component of the DeSantis Administration's legislative agenda," was signed by the Governor "to great fanfare at a 'Fox exclusive' appearance on the Fox News Channel's *Fox and Friends* program." *Id.* at 1148 n.19.

The Court has even called the State of Florida "stupid." *Floridians Protecting Freedom, Inc. v. Ladapo*, 754 F. Supp. 3d 1165, 1171 (N.D. Fla. 2024) ("To keep it simple for the State of Florida; it's the First Amendment, stupid.").

## LEGAL STANDARD

Under 28 U.S.C. § 455(a), a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Added to section 455 in 1974, subsection (a) is a "'catchall' recusal provision" that duplicates

some of the restrictions in subsection (b), including subsection (b)(1)'s requirement that a judge "disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party." *Liteky*, 510 U.S. at 547, 553 n.2 (quoting 28 U.S.C. § 455). Thus, the scope of both subsections aligns when the basis of disqualification is a judge's alleged bias or "judicial predispositions" for or against a party in a pending case. *Id*. at 552.

And as the Supreme Court's landmark decision in *Liteky* makes clear, both subsections (a) and (b)(1) are subject to the "extrajudicial source factor," which distinguishes between judicial bias that stems from an extrajudicial source—that is, "a source outside judicial proceedings"—and bias stemming from an intrajudicial source—that is, "facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" involving the same disfavored litigant. *Id*. at 554–55. A more stringent standard applies to a judicial predisposition that is formed from facts introduced by or behavior of a party in the litigation, and hostile comments or other manifestations of judicial animosity that are based on such intrajudicial sources are disqualifying only if "they reveal such a high degree of . . . antagonism as to make fair judgment impossible." *Id*. at 555.

"Under § 455 the standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). The test for recusal under Section 455 is an

objective one: "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky*, 510 U.S. at 548. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)). Thus, "any doubts must be resolved in favor of recusal." *Id.*; *see also Walt Disney Parks & Resorts U.S., Inc. v. DeSantis,* No. 4:23-cv-163, 2023 WL 11763037, at *1 (N.D. Fla. June 1, 2023 ) ("'[W]hen a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification.'" (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988))).

## ARGUMENT

The catalog of insults outlined above—all of them wholly unnecessary to the decisions in the cases—stands alone in this Court's reported decisions. No other litigant has been accused of being "stupid," a "bully," an "abusive meanie," and a "political grandstand[er]"; nor of creating a "positively dystopian" Orwellian world in which we are all "cast . . . into the dark"; nor of behaving like communist apparatchiks beholden to the "ruling party"; nor of being religious bigots condemning *all* Muslims as terrorists. "When the remarks of the judge . . . clearly indicate a hostility to one of the parties, . . . the judge indicates, whether consciously

or not, a personal bias and prejudice." *Knapp v. Kinsey*, 232 F.2d 458, 466 (6th Cir. 1956). And when hostile judicial remarks are, as here, entirely gratuitous, the inference of personal bias is unavoidable, as this Court has itself emphasized in a case in which it rejected a motion to disqualify. *See* Order Denying Mots. For Recusal, *Fla. State Conf. of Branches & Youth Units of the NAACP v. Byrd*, 4:23-cv-215, (N.D. Fla. Feb. 27, 2024), ECF 234 at 3–5 ("But this quoted language was not just some gratuitous aside in my Order on Remand. . . . [M]y statements in [the] Order on Remand . . . were not directed at any party in those cases or the cases now before me. . . . It would be a different case had I made gratuitous statements about Defendant Byrd, but that is not what happened.").

The Court's rhetoric is more at home in the press releases of activist organizations than in judicial opinions, so it is hardly surprising that the plaintiffs in these cases often quote the Court's political rhetoric in their press releases and social media posts.[1] And the Court leaves no doubt about who is wearing the white hats,

[1] *See, e.g.,* Press Release, CAIR, SPLC, CAIR LDF, MLFA, and Akeel & Valentine Win Injunction Blocking Fla. Governor Ron DeSantis's 'Blatantly Unconstitutional' Executive Order (Mar. 4, 2026), https://perma.cc/B3TZ-Y49N (quoting the Court's Order as saying, "The First Amendment bars the Governor from continuing the troubling trend of using an executive office to make a political statement at the expense of others' constitutional rights."); Press Release, CAIR Florida, SPLC, CAIR LDF, MLFA, and Akeel & Valentine Win Injunction Blocking Fla. Governor Ron DeSantis's 'Blatantly Unconstitutional' Executive Order (Mar. 4, 2026), https://perma.cc/56CF-SRY7 (same); Image posted by CAIR (@cair_national) & CAIR Florida (@cairflorida), Instagram (Mar. 4, 2026), https://perma.cc/EK6P-GF8E (same); Statement, Protect Democracy, Federal appeals court rules for free speech & free enterprise, rejecting Florida law censoring private companies' speech on race and gender (Mar. 4, 2024), https://perma.cc/L89C-PUYS (noting the Court's "ruling described HB7 as a bizarro inversion of traditional free speech values, invoking the Netflix show 'Stranger Things' to describe the law as

either. *See Austin*, 580 F. Supp. 3d at 1176 ("[T]his nation's 'priests of democracy'—its learned professors—guide us in our pursuit of truth and informed citizenship."); *Pernell*, 641 F. Supp. 3d at 1291 ("If our 'priests of democracy' are not allowed to shed light on challenging ideas, then democracy will die in darkness."); Order at 28 (CAIR is "one of America's largest Muslim civil rights organizations."); *see also Honeyfund*, 622 F. Supp. 3d at 1186–87.

Nor has the Court's hostile rhetoric been lost on the media. Many news outlets have published stories noting this Court's antipathy to Florida's current government,[2] which further undermines public confidence in judicial neutrality. *See*

---

a 'First Amendment upside down' that upends the Bill of Rights"); LeRoy Pernell, *Action Taken to Stop Attack on Critical Race Teaching in Florida – Part II*, LinkedIn (Nov. 20, 2022), https://perma.cc/H68D-BM6D (quoting the Court's Order as characterizing the law as "positively dystopian"); Press Release, Legal Defense Fund, Judge Blocks Florida's "Stop W.O.K.E." Censorship Bill From Taking Effect in Higher Education (Nov. 17, 2022), https://perma.cc/V2UP-JQPP (noting the Court called the Act "positively dystopian"); Foundation for Individual Rights and Expression, *VICTORY: After FIRE lawsuit, court halts enforcement of key provisions of the Stop WOKE Act limiting how Florida professors can teach about race, sex*, FIRE (Nov. 17, 2022), https://perma.cc/92DA-3UC4 (same).

[2] *See, e.g.,* Matt Naham, *'Choosing to be a bully': Judge upbraids DeSantis for 'terrorist organization' executive 'decree' that 'bears all the hallmarks of unconstitutional coercion'*, LAW & CRIME (Mar. 5, 2026), https://perma.cc/QW75-4ENU ("In a parting shot buried in a footnote, the judge said it 'pains' him to 'have to point out that not all Muslims are terrorists.'"); Chris Marr, *Judge in Disney-DeSantis Dispute Known for Torching GOP Policies*, BLOOMBERG LAW (May 18, 2023), https://perma.cc/VF6D-K243 ("Mark E. Walker has called laws championed by Republicans racist and dystopian . . . ."); Gary Fineout, *Federal judge who ruled against DeSantis will recuse himself from Disney case*, POLITICO (June 1, 2023), https://perma.cc/3CHW-H2FT ("Walker . . . has presided over several contentious legal fights in the past several years that have involved DeSantis, former Gov. Rick Scott and the GOP-controlled Florida Legislature."); Liam Reilly & Brian Stelter, *'It's the First Amendment, stupid': Federal judge blasts DeSantis administration for threats against TV stations*, CNN (Oct. 18, 2024), https://perma.cc/H8JH-ZEVJ ("'To keep it simple for the State of Florida; it's the First Amendment, stupid.' That's what a federal judge wrote Thursday as he sided with local TV stations in an extraordinary dispute over a pro-abortion rights television ad."); Zach Schonfeld, *Judge blocks DeSantis's 'Stop WOKE Act,' says Florida feels like a 'First Amendment upside*

*Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 84 (3d Cir. 1992) (ordering reassignment after judge's criticisms in opinion "generated widespread attention in the media"). More importantly, and tellingly, a fellow district court judge in this Circuit has cited this Court's "negative comments" (*e.g.*, "positively dystopian") and "hyperbole" ("priests of democracy") in the *Pernell* case, commenting that it "may say something about that court's predisposition on these issues." *Simon v. Ivey*, No. 2:25-cv-00067, 2025 WL 2345845, at *66 n.60 (N.D. Ala. Aug. 13, 2025). Even the *Plaintiffs in this case* have themselves, in *CAIR I*, characterized this Court as "another one of [Governor DeSantis'] critics." Appellees' Resp. Br., *CAIR I*, No. 26-10735 (11th Cir. July 20, 2026), ECF 40 at 56.

The *CAIR I* case is a precursor to this one, and Governor DeSantis has asked the Eleventh Circuit to order reassignment of that case because the gratuitous scorn and mockery of the Governor in the Court's preliminary injunction order, standing alone, "reveal such a high degree of . . . antagonism as to make fair judgment

---

*down'*, THE HILL (Aug. 18, 2022), https://perma.cc/55Q7-FJJ4 ("'Recently, Florida has seemed like a First Amendment upside down,' Walker wrote in the ruling, comparing the law to the fictional 'upside down' in the Netflix series 'Stranger Things.'"); Nate Monroe, *Opinion: Federal judge smacks down DeSantis administration over threats in abortion fight*, THE FLA. TIMES-UNION (Oct. 18, 2024), https://perma.cc/Y4YT-WTJ2 ("It's a continuing oddity of Florida's litigation-saturated Ron DeSantis era that federal judges have become nearly household names, and none more so than U.S. District Judge Mark Walker . . . ."); Liz Dye, *Epic Benchslap: University Of Florida Gets Spanked In Effort To Gag Professors Testifying Against State*, ABOVE THE LAW (Jan. 24, 2022), https://perma.cc/W95V-SB6N ("But the school probably didn't expect to get compared to the Chinese Communist Party in the very first paragraph of the order granting the injunction.").

impossible." Reply Br., *CAIR I*, No. 26-10735 (11th Cir. July 23, 2026), ECF 67 at 30 (quoting *Sentis Grp., Inc. v. Shell Oil Co.,* 559 F.3d 888, 904 (8th Cir. 2009)). As the Governor argued, given "the bias within the Order's four corners," "[o]nly reassignment will remedy the 'appearance of a lack of neutrality and act to preserve in the public mind the image of absolute impartiality and fairness of the judiciary.'" *Id*. at 26 (quoting *United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir. 1989)). The antagonistic comments in this Court's Order are no less revealing of disqualifying bias than the judicial comments warranting reassignment in other cases. *See, e.g*., *Torkington*, 874 F.2d at 1447 (government's prosecution criticized as "silly" and "a waste of the taxpayers' money"); *Haines*, 975 F.2d at 88 (court stated in opinion that "the tobacco industry may be the king of concealment and disinformation" (quoting *Haines v. Liggett Grp., Inc.,* 140 F.R.D. 681, 683 (D.N.J. 1992))). It follows that this Court's disqualification is likewise necessary in this closely related case.

*CAIR I* does not stand alone, however, in justifying disqualification in this case. As demonstrated above, it is but the latest in a series of prior cases, wholly unrelated to this one, in which this Court's candidly expressed disdain for the Governor and the State has betrayed its bias against them. And while "an objective, fully informed lay observer" of any of those prior unrelated cases "would entertain significant doubt about the judge's impartiality" in this case, the issue here is not

whether each, or any, of these prior cases, including *CAIR I*, would alone satisfy the standard for disqualification under section 455(a) and (b)(1). No, the issue here is what impact would the cumulative weight of *all* of the Court's antagonistic comments in *all* of the prior cases, taken together, have on the mind of an objective, fully informed lay observer? And *that* lay observer would have no doubt at all about the Court's partiality.

This case thus presents a novel issue under Section 455, for we have found no precedent in which a claim of disqualifying judicial bias is based not only on antagonistic judicial comments against a litigant in a single case and/or a closely related case, *see Liteky*, 510 U.S. at 542–43, 556, but rather is also based, as here, on a history of gratuitous antagonistic comments by the same judge against the same repeat litigant in several unrelated cases over a period of years. This novel issue, however, is not a hard one.[3] For it is obvious that a pattern of judicial antipathy against a single repeat litigant in several unrelated cases cannot reasonably be dismissed as serial "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id*. at 555–56. To the

[3] The Supreme Court has made clear that even a single instance of intrajudicial bias can disqualify a judge. *Liteky*, 510 U.S. at 555 (citing *Berger v. United States*, 255 U.S. 22, 28–29 (1921)). This Court, on the other hand, has gone far beyond a one-case, negative interaction with the Governor and State. As explained, this Court has repeatedly expressed disdain for the Governor and the current government of the State of Florida. And more than simply express disdain, this Court has done so pejoratively.

contrary, such repeated judicial "manifestations of animosity," *id.* at 556 n.3, can reasonably be seen only as "reveal[ing] such a high degree of . . . antagonism as to make fair judgment impossible," *id.* at 555; *see Cobell v. Kempthorne*, 455 F.3d 317, 333–34 (D.C. Cir. 2006) (the court's repeated criticisms "suggest the district court has condemned . . . the [government] as an institution."). And this is especially true where, as here, this case is closely related to a case in which the Court has already displayed its lack of impartiality.

At a minimum, this Court's record of animosity "gives rise to the appearance of . . . a lack of impartiality in the mind of a reasonable member of the public." *Torkington*, 874 F.2d at 1446.

* * *

As the Eleventh Circuit has explained: "It is not merely of some importance but is of *fundamental* importance that justice should not only be done, but should manifestly and undoubtedly *be seen* to be done." *United States v. White*, 846 F.2d 678, 696 (11th Cir. 1988) (emphasis in original) (citation omitted). Accordingly, in keeping with the principle that any doubt about whether disqualification is required should be resolved in favor of disqualification, the Court should recuse itself from this case.

## CONCLUSION

For the foregoing reasons, the Court should recuse itself and order that the case be reassigned to another judge.

DATED: August 21, 2026

Respectfully submitted,

JAMES UTHMEIER
*Attorney General of Florida*

/s/ Charles J. Cooper
CHARLES J. COOPER (NO. 248070DC)
JOHN D. RAMER*
JESSICA P. CRAINE*
RILEY W. WALTERS**

**COOPER & KIRK, PLLC**
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
ccooper@cooperkirk.com
jramer@cooperkirk.com
jcraine@cooperkirk.com
rwalters@cooperkirk.com

*Appeared *Pro Hac Vice*
***Pro hac Vice* Motion forthcoming

/s/ David M.S. Dewhirst
DAVID M.S. DEWHIRST (FBN 1076928)
*Solicitor General*
TYLER E. GUSTAFSON (FBN 1049292)
*Assistant Solicitor General*
JASON J. MUEHLHOFF (FBN 1076410)
*Chief Deputy Solicitor General*

**OFFICE OF THE ATTORNEY GENERAL**
The Capitol, PL-01
Tallahassee, FL 32399-1050
Tel: (850) 414-3300
david.dewhirst@myfloridalegal.com
tyler.gustafson@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com
jenna.hodges@myfloridalegal.com

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I, Charles J. Cooper, hereby certify that this memorandum complies with Local Rule 7.1(F) because it contains 4,045 words.

I also certify that this motion complies with Local Rule 7.1(B) because counsel attempted in good faith to resolve the issues raised in this motion through a meaningful conference with opposing counsel, conducted via email beginning on August 18, 2026, affording opposing counsel at least 24 hours to respond, and the parties were unable to resolve their disagreement, as opposing counsel opposes this motion.

Dated: August 21, 2026

*/s/ Charles J. Cooper*
Charles J. Cooper
COOPER & KIRK, PLLC
Telephone: (202) 220-9600
ccooper@cooperkirk.com

## CERTIFICATE OF SERVICE

I, Charles J. Cooper, hereby certify that a true and correct copy of the foregoing document was sent via CM/ECF on August 21, 2026, to all counsel of record.

Dated: August 21, 2026

*/s/ Charles J. Cooper*
Charles J. Cooper
COOPER & KIRK, PLLC
Telephone: (202) 220-9600
ccooper@cooperkirk.com