**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**CAIR-FOUNDATION, INC., and**
**CAIR-FLORIDA, INC.,**

***Plaintiffs,***

**v.** **Case No.: 4:26cv315-MW/MJF**

**RONALD DESANTIS, et al.,**

***Defendants.***
**_____________________________/**

**ORDER DENYING MOTION FOR DISQUALIFICATION**

This Court has considered, without hearing, Defendants' motion for disqualification, ECF No. 50, and Plaintiffs' response in opposition, ECF No. 58. For the reasons that follow, Defendants' motion is **DENIED**.

The bar for disqualification is high. And it is not met here. Defendants are not seeking to disqualify me based on actions that I have taken in *this* case. Indeed, the only substantive actions I have taken in this case have run to the benefit of Defendants. *See* ECF No. 26 (denying Plaintiffs' motion temporary restraining) and ECF No. 28 (denying Plaintiffs' emergency motion for reconsideration).

Nor are Defendants arguing that disqualification is necessary based on any extrajudicial source or extrajudicial comments I have made about Defendants or this case. *See, e.g.*, *United States v. South Florida Water Management District*, 290 F. Supp. 2d 1356, 1361 (S.D. Fla. 2003) (order disqualifying judge where "it is evident

that extrajudicial sources may have influenced [the judge] . . . or, at least, there is a reasonable appearance of such influence," where the disqualified judge had engaged in multiple interviews with reporters regarding the case at hand).

Instead, Defendants' motion is based on the proposition that I have displayed bias against the Governor and the State of Florida by making critical statements in prior cases about state statutes and policies at issue in those cases and which this Court determined were unconstitutional. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Likewise, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

As Plaintiffs point out, Defendants fail to explain how a reasonable observer fully informed of the facts and context would have the impression or harbor significant doubts as to whether I have a "deep-seated . . . antagonism [toward Governor DeSantis or the State of Florida] that would make fair judgment impossible," given the vast swath of cases in which I have ruled in either the

Governor's or the State of Florida's favor.[1] Instead, Defendants ignore the overwhelming majority of this Court's caseload involving the Governor or the State, generally, and instead point to cherry-picked quotations taken out of context from prior decisions involving constitutional challenges to the Governor's policies or the Florida Legislature's enactments to argue that I have some deep-seated bias against the Governor and the State.

But even zooming in on cases involving various constitutional challenges to state statutes and policies, the record is undeniably mixed—Plaintiffs again point out that I have repeatedly ruled in the Governor's and the State of Florida's favor in such cases. *See, e.g.*, ECF No. 58 at 4 (listing cases). The fact that I communicated strong views after judging the arguments and evidence presented in some prior cases involving constitutional challenges to state law or policy, without hiding behind sterile legalese in my written Orders, is no evidence of deep-seated antagonism toward any party or counsel.

In effect, Defendants' contention is that they have a right to disqualify me from any case involving the State of Florida or the Governor because I have sometimes expressed strong views related to the legal analysis and the merits of prior

[1] Indeed, Defendants' motion fails to recognize broad categories of cases involving the Governor or the State of Florida that I have ruled on and in which the State Defendants often, and in some cases, almost always prevail, such as section 2254 habeas cases, death-penalty cases, employment cases, and other civil rights cases.

cases involving Defendants or other state entities.[2] But "judicial remarks that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Arnold ex re. Arnold v. City of Hampton*, No. 25-10123, 2026 WL 2491587, at *5 (11th Cir. Aug. 25, 2026) (quoting *Liteky*, 510 U.S. at 555)); *see also Belue v. Leventhal*, 640 F.3d 567, 575 (4th Cir. 2011) ("[I]f strong views on a matter were disqualifying—then a judge would hardly have the freedom to be a judge.").[3] Indeed, "purging through recusal motions all those with strong or strongly stated beliefs not only threatens limitless gamesmanship but the fearless administration of justice itself." *Belue*, 640 F.3d at 574.

And the language Defendants object to, when read in context, is pertinent to the issues and evidence presented in the cases at hand and communicates that to the

[2] Indeed, Defendants rely on cherry-picked quotations from cases that did not involve the Governor or any of the other Defendants at issue in this case to argue that I am biased against the Governor and other Defendants in this case, which is nonsense.

[3] I am hardly the only judge who has used strong language regarding the merits of a case involving the State of Florida or its state actors. *See, e.g.*, *Pernell v. Fla. Bd. of Govs. of St. Univ.*, 181 F.4th 1135, 1150 (11th Cir. 2026) (Grant, J.) ("But there is nothing ordinary about the authority Florida seeks here. The level of control that Florida demands—total—would be inconsistent not only with our Nation's traditional constitutional protections for academic freedom, but also with the doctrines Florida cobbles together to support its suppression of disfavored viewpoints."); *id*. at 1166 (This is not the first time that the State has tried to lead us down the garden path about the purpose and effect of a law banning speech. We have once before rejected its reframing of the Individual Freedom Act's proscriptions, and we do so again here."); *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024) (Grant, J.) ("No matter how hard Florida tries to get around it, 'viewpoint discrimination is inherent in the design and structure of this Act.' . . . No matter how controversial the ideas, allowing the government to set the terms of the debate is poison, not antidote.").

parties in plain terms.[4] A reasonable observer, fully informed of the facts and context (rather than the cherry-picked quotations that Defendants conveniently "cobble together," in the words of Judge Grant), including my record of frequently ruling in favor of the Governor and the State of Florida, would not conclude or have significant doubt that I have some deep-seated antagonism toward Defendants that would make fair judgment impossible.

---

[4] Defendants' "evidence" of so-called bias is, again, nonsense. For example, in critiquing this Court's language in cases involving constitutional challenges to laws impacting academic institutions and university professors, Defendants take issue with my reference to teachers and professors as "priests of democracy." Of course, I did not invent this phrase to gratify some personal partiality toward a particular party. Instead, Supreme Court Justice Felix Frankfurter is the source of the phrase, and I was quoting his concurring opinion in *Wieman v. Updegraff*, 344 U.S. 183, 196 (1952), while explaining the Supreme Court's historic recognition of the importance of academic freedom in cases involving academic freedom and First Amendment rights. Defendants fail to explain how my quotation of a Supreme Court case pertinent to the issue at hand in the cases before me is somehow evidence of deep-seated antagonism toward them. The reason why they fail to offer any explanation is because it is not and there is no deep-seated antagonism.

Other examples are similarly flawed. In an earlier case involving some of the same parties, I determined whether the Governor's actions crossed the line from permissible persuasion of third parties to unconstitutional coercion of third parties to violate the plaintiff's First Amendment rights. Defendants critique my legal analysis in that earlier case, specifically regarding my explanation of the difference between "bullies" (as commonly understood) versus the "bully pulpit." But this distinction was just another way of describing unconstitutional coercion versus permissible persuasion, which was directly tied to the First Amendment claim of coercion in that case. *See CAIR-Foundation, Inc. v. DeSantis*, 822 F. Supp. 3d 1263, 1273 (N.D. Fla. 2026) ("Plaintiff contends that preliminary injunctive relief is necessary to prevent future harm and to remedy ongoing harm to its First Amendment right to free speech due to Defendant's coercion of third parties to suppress its speech."). So too, my pointing out the obvious—the Governor is not also the President of the United States—was in response to clearly distinguishable case law involving the power of the President that the Governor, in that earlier case, disingenuously injected into the proceeding. *Id*. at 1277 n.13 ("Likewise, Defendant relies on other cases discussing the federal Executive's authority in matters of national security and immigration to support his contention that his EO is entitled to deference. . . . But these cases involve the power of the federal executive—the President of the United States—in a context uniquely within the federal government's control.").

Without exploring all the other defects in the motion, for the reasons noted above and as thoughtfully outlined in Plaintiffs' response, Defendants' motion is wholly without merit. In fact, I find the motion is nothing more than rank judge-shopping. Sadly, this practice has become all too common in this district. *Cf. Common Cause Fla. v. Lee*, Case No. 4:22cv109-AW/MAF, 2022 WL 2343366, at *1 (N.D. Fla. Apr. 6, 2022) (dismissing meritless motion to disqualify in a redistricting case).

However, Defendants did get one thing right. That is, if a judge has doubts over whether disqualification is required, he or she should resolve those doubts in favor of disqualification. I have consistently followed this principle. For example, I have disqualified myself where, after holding a hearing to investigate the issue, I learned that a former state-court colleague might be called as a witness in the case. *G.H. v. Tamayo*, Case No. 4:19cv431-MW-MJF (N.D. Fla. Mar. 11, 2021). I have disqualified myself in a case where folks thoughtlessly discussed case strategy and other matters regarding the case in public and I was later informed of the conversation. *Austin v. Lamb*, Case No.: 1:25cv16-MW/MJF (N.D. Fla. July 7, 2026). I have also disqualified myself, even after denying the defendant's motion for disqualification as meritless, after learning by happenstance that a close family member had not sold their shares of stock in the plaintiff's parent corporation and conferring with the Administrative Office for guidance. *Walt Disney Parks and*

*Resorts US Inc. v. DeSantis*, Case No.: 4:23cv163-MW/MJF (N.D. Fla. June 1, 2023). But this is not a close case.

My colleague got it right in another case when he noted that although it might seem easier to recuse to dispel even a "hint" of prejudice, the Eleventh Circuit has emphasized that the easy way out is not the answer. *See Common Cause Fla.*, 2022 WL 2343366, at *5. "If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges." *Id*. (quoting *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986)). Ultimately, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id*. (quoting *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014)).[5] Accordingly, Defendants' motion to disqualify, ECF No. 50, is **DENIED**.

**SO ORDERED on September 14, 2026.**

**s/Mark E. Walker**
**United States District Judge**

[5] This Court recognizes that a related request for reassignment is pending before the Eleventh Circuit in an earlier case involving similar parties. One thing is clear, if Defendants' unfounded argument prevails, they do not get to pick and choose which cases I sit on based on whether they agree with the outcome. For example, if Defendants believe I cannot be fair to the State, I find it curious that no motion for disqualification has been filed in another pending constitutional challenge in which I have repeatedly ruled in the State's favor. *See Upside Foods, Inc. v. Simpson*, Case No.: 4:24cv316-MW/MAF (N.D. Fla. Oct. 11, 2024) (Order denying preliminary injunction); *id*. (N.D. Fla. Apr. 25, 2025) (Order dismissing all but one claim against State defendants). Accordingly, if the Eleventh Circuit is persuaded that I should be disqualified, I will of course follow the Eleventh Circuit's directive and will disqualify myself from *all* cases involving the State of Florida.