**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**CAIR-FOUNDATION, INC., and**
**CAIR-FLORIDA, INC.,**

***Plaintiffs,***

**v.** **Case No.: 4:26cv315-MW/MJF**

**RONALD DESANTIS, et al.,**

***Defendants.***
**______________________________/**

**ORDER DISMISSING CASE FOR LACK OF STANDING**

"The case-or-controversy requirement sets fundamental limits on federal judicial power." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (citation omitted). "Perhaps the most important of the Article III doctrines grounded in the case-of-controversy requirement is that of standing." *Id*. (citation and quotation marks omitted). "Standing cannot be waived or conceded by the parties, and it may be raised (even by the court *sua sponte*) at any stage of the case." *Id*. (citations omitted).

This Court previously ordered Plaintiffs to show cause why this case should not be dismissed for lack of standing. ECF No. 64. This Court has considered, without hearing, Plaintiffs' response, ECF No. 65, and Defendants' response, ECF No. 68. This Court recognizes that Plaintiffs intend to file an amended complaint based on events that occurred *after* the complaint was filed on July 1, 2026. *See* ECF

No. 62 at 2 (requesting deadline by which to file amended complaint). However, "[s]tanding is determined at the time the plaintiff's complaint is filed." *Arcia v. Fla. Sec'y of St.*, 772 F.3d 1335, 1340 (11th Cir. 2014); *see also Falls v. DeSantis*, 2023 WL 3568526, at *1 (N.D. Fla. May 19, 2023).

Plaintiffs' argument that they had standing at the time this case was filed on July 1, 2026, is grounded in fears of harms that arguably would flow from a terrorist designation under the challenged law—but these fears are based on statements the Governor made at a press conference and in press releases issued before the relevant actors took action toward making the feared designation. This Court concludes that Defendants have the better of the argument as to whether Plaintiffs' allegations in the original complaint give rise to Article III standing at the outset of this case. *See* ECF No. 68 at 1–2. In short, Plaintiffs' factual allegations based entirely on fears of potential future harms on or before July 1, 2026, do not give rise to an imminent, cognizable injury-in-fact and Plaintiffs have not demonstrated Article III standing at the time of filing of the original complaint.

The question is whether Plaintiffs can "cure" this lack of standing at the time of filing the original complaint by filing an amended complaint that alleges new facts that had not yet occurred when this case was originally filed. Plaintiffs contend the "majority rule" allows for such a cure by operation of Rule 15(d) of the Federal Rules of Civil Procedure. But there is a circuit split on this exact issue, and Plaintiffs

identify no Supreme Court or Eleventh Circuit decision that follows this "majority rule" that considers whether events subsequent to the filing of the original complaint can cure an Article III standing defect in the original complaint. *See, e.g.*, *Scahill v. District of Columbia*, 909 F.3d 1177, 1183 (D.C. Cir. 2018) (explaining circuit split and listing cases).

As the D.C. Circuit recognized in 2018, the Tenth, Seventh, and Eighth Circuits all employ the ordinary rule, absent this Rule 15(d) amendment gloss, that "standing is determined at the time the action is brought . . and we generally look to when the complaint was first filed, not to subsequent events to determine if a plaintiff has standing." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citation and quotation marks omitted). The Eleventh Circuit has echoed this ordinary rule. *See A&M Gerber Chiropractic*, 925 F.3d at 1212 ("Importantly, Article III standing must be determined as of the time that the plaintiff's complaint is filed."); *Arcia*, 772 F.3d at 1340 ("Standing is determined at the time the plaintiff's complaint is filed."); *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409 (11th Cir. 1995) ("To determine whether AGL has met this burden, we 'look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time.' " (citation omitted)).

This Court recognizes that the Supreme Court, in another context, determined that "[a] supplemental complaint . . . would have eliminated a jurisdictional issue,"

involving the "filing of an application [for enrollment in the Medicare Part B supplemental medical insurance program]" which is "a nonwaivable condition of jurisdiction," under a federal statute. *Mathews v. Diaz*, 426 U.S. 67, 75 (1976). However, this Court is not persuaded by the Circuits that have extended this language to allow parties to "cure" Article III standing defects by amending their complaints to allege new facts that did not exist at the time the case was filed, particularly in the face of numerous, binding Supreme Court and Eleventh Circuit decisions that direct this Court to analyze Plaintiffs' standing and the facts that existed at the time the case was originally filed.[1] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) ("It cannot be that, by later participating in the suit, the State Department and AID retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset."); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court

---

[1] Indeed, while the Circuits that have adopted the so-called "majority rule" make compelling policy arguments why an amended complaint is a better choice to dismissal and refiling, this Court does not get to ignore the decades of binding precedent directing this Court to look to the facts at the outset of the litigation to determine if Plaintiffs have standing. *See, e.g.*, *Scahill*, 909 F.3d at 1183–84 (discussing purposes behind Rule 15(d) and allowing parties to correct jurisdictional defects through subsequent pleadings to "circumvent[] the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief" (quoting *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir. 2015)). Of course, the Eleventh Circuit, in another standing case, has recognized that lack of convenience and greater expense are no reason to take shortcuts when it comes to standing. *See Jacobson v. Fla. Sec'y of St,*, 974 F.3d 1236, 1258 (11th Cir. 2020) ("To satisfy traceability and redressability, the voters and organizations should have sued the Supervisors of Elections instead of the Secretary of State. That approach would have made for [67] more defendants, but nothing prevented the voters and organizations from taking that course of action.").

adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (citation and quotation marks omitted)); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that FOE had Article III standing at the outset of the litigation."); *id.* at 191 ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum.").

Nor is this Court persuaded by Plaintiffs' citation to several district courts within the Eleventh Circuit that follow the "majority rule." Those decisions are not binding on this Court. Moreover, other districts in this Circuit have not readily adopted the approach of permitting plaintiffs to "cure" standing defects by filing amended complaints alleging new facts that did not exist at the outset. *See, e.g.*, *Eternal World Television Network, Inc. v. Sebelius*, 935 F. Supp. 2d 1196, 1214 and n.16 (N.D. Ala. 2013) (considering standing at time the original complaint was filed and noting that the court "is not entirely convinced that the time the Amended Complaint was filed is the operative date for purposes of standing," because "subject-matter jurisdiction depends on the actual state of things at the time the action is brought.").

In short, this Court concludes that Plaintiffs' original complaint filed on July 1, 2026, fails to allege facts establishing Article III standing insofar as it is premised

on speculative fears of possible future harms. This Court is also not persuaded that Plaintiffs can "cure" this standing defect by filing an amended complaint that adds facts that did not exist at the time this case was originally filed. Nor is this Court inclined to proceed in this case and allow the parties to potentially litigate it for years with this underlying jurisdictional defect. No matter the outcome, if this Court reaches the merits in this case and either side appeals, the Eleventh Circuit is likely to determine this Court lacked jurisdiction to reach the merits given Plaintiffs' lack of standing at the time of filing the original complaint. Accordingly, this case is **DISMISSED** for lack of subject-matter jurisdiction insofar as Plaintiffs did not have standing at the time the case was filed on July 1, 2026. Plaintiffs may, of course, file a new lawsuit that alleges any new facts or change in circumstances if they wish to pursue these claims—this of course may cure the standing defect this Court has already identified. But inasmuch as Plaintiffs lacked standing at the time of filing *this* case, their claims are due to be dismissed because this Court does not have jurisdiction to hear them.

The Clerk shall enter judgment stating, "This case is **DISMISSED for lack of subject-matter jurisdiction**," and close the file.

**SO ORDERED on October 1, 2026.**

**s/Mark E. Walker**
**United States District Judge**